WILLIAM CALL vs. FRANKLIN HOUDLETTE.

Lincoln.    Opinion November 1, 1879.

*Several owners.   Judgment.   Appropriation.   Administrator.   Liability.
Set off.   Attorney.   Agency.*

Where a judgment is recovered, for the earnings of a vessel, in the name of
only one of several owners of the vessel, the presumption is that the other
owners are entitled to their share of the proceeds thereof, after deducting
the costs and expenses of collecting the same.

An administrator, who collects money upon a judgment founded on a suit in
the name of his intestate, is not individually liable to another for a share
thereof belonging to such other person, unless before he appropriates the
same to the use of the estate he has notice not to pay it over, or unless in
paying it over he has acted in bad faith.

In a suit for money thus collected and wrongfully withheld, accruing from
the earnings of a vessel owned by the plaintiff and defendant's intestate
and another, the defendant cannot set off against the claim against himself
an account due his intestate from the same vessel.  Such matters can be
adjusted only in equity.

The defendant would not be liable, if the money was collected in his name as
administrator by the attorney who conducted the suit, and paid over by the
attorney, without the assent of the defendant, to a person to whom the
defendant's intestate had assigned the claim before judgment had been
recovered thereon.

ON EXCEPTIONS.

ASSUMPSIT for money had and received.  Plea, the general
issue.   At the trial, after the evidence was all in, the presiding
justice instructed the jury *pro forma,* to return a verdict for the
plaintiff for three-sixteenths part of so much of the judgment of
*Franklin Houdlette, administrator* v. *Cheeseman & al.,* as was
for freight and demurrage of Brig Yazoo, and interest, and the
jury returned a verdict for plaintiff in the sum of $1021.81, the
amount agreed upon by the parties.   The defendant alleged
exceptions.

The facts are stated in the opinion.

*A. P. Gould* and *J. E. Moore* for plaintiff contended as follows :

Plaintiff seeks to recover his share of a bill of freight earned by
the Yazoo of which he and Hagar were part-owners.   It accrued
under a charter and bill of lading signed by McGown the master

as agent of the owners. Hagar, having possession of the bill of lading, brought a suit upon it in his own name, for the whole freight, which was pending at his death. The bill of lading fell into defendant's hands, and he appeared as administrator, prosecuted the suit to judgment and collected the execution, receiving the share of the money due to plaintiff, as well as to Hagar's estate. Defendant now claims, 1st, that Hagar assigned the whole claim to Whitmore to secure certain notes due from him and his mother and brother; and 2nd, that he is entitled to retain plaintiff's share of the money as an asset of Hagar's estate.

I. There was no written evidence offered to prove an assignment and the verbal evidence was rejected. But if there had been legal evidence of it, the assignment was void as to plaintiff's share.

Hagar could not assign plaintiff's interest in the charter or its proceeds. An agent or factor cannot transfer goods or choses in action or money which have come into his hands as such. *Denston* v. *Perkins & als.*, 2 Pick. 86. *Chesterfield Manufacturing Co.* v. *Dehon*, 5 Pick. 7. *Thompson* v. *Perkins*, 3 Mason, 232. *Thompson applt.* v. *White*, 45 Maine, 445.

II. One recovering money as administrator, is liable to the real owner of the funds individually. This has never been questioned; and the only doubt expressed in the authorities is, whether, if the plaintiff so elects, he is not also liable *de bonis testatoris*. *Cronan* v. *Cotting*, 99 Mass. 334. *Ashby* v. *Ashby*, 7 Barn. and Cres. 444. (14 E. C. L. R. 202). *Rose* v. *Bowler*, 1 H. Black. 109. *Powel* v. *Graham*, 7 Taunton, 581, (2 E. C. L. R. 501). *Childs* v. *Moninsdal*, 2 Brod. & Bing. 460. (6 E. C. L. R. 228). Red. Wills, P. II, 289, 290.

In *Cronan v. Cotting*, defendant recovered judgment as administratrix on a claim which belonged partly to the plaintiff and partly to the estate which the defendant represented he held as security for a debt due from plaintiff to it. The court say: "The balance of the money collected, after paying the debt due from the plaintiff, was not assets of the estate in her hands, and the defendant is not liable for such balance in her representative capacity. This action is accordingly well brought for money received by the defendant to the plaintiff's use."

In *Ashby* v. *Ashby*, Bayley, J. (p. 204) says : "Suppose a bill payable to the testator was remitted from a foreign country, half the amount applicable to the personal use of the testator, and the other half to be paid over by him to some other person. Before the bill arrives the testator dies, and his executor receives the money. It is possible that he may not have received advice as to the mode in which it is to be applied, until after he has applied it in the ordinary course of administration. The testator may be insolvent." Under such circumstances he concedes that an action for the money might be maintained against the executor personally, but, he says, "it would be hard if the party should not have his election, to be paid out of the funds of the testator, and I should be disposed to think that an action for money had and received, might, at the election of the party for whose benefit it was received, be maintained against the defendant in his representative capacity ;" but he held, with the other members of the court, that upon the authorities an action would lie against the executor in his individual capacity only.

Holroyd, J., in the same case, says (p. 205), "If that is the plaintiff's money, he is entitled to it, whether there be assets or not, and whether the executors have or have not applied to other purposes the money which was received to plaintiff's use."

This is upon the ground, that the contract was with the executor, and not with the testator. Upon the reception of the money by the executor, the promise was implied, that he would pay it to the party to whom it really belonged. So in our case, defendant recovered judgment upon a charter due in part to plaintiff, which was held by defendant's intestate at his death, but upon w hich the judgment was recovered by the defendant, and the money collected on his execution by himself, or his agent. The privity of contract was, therefore, between plaintiff and defendant, not defendant's intestate.

Littledale, J., in same case (p. 205) says : "The defendants are charged with having received money in their character of executor and executrix. The question is, whether that makes the defendants liable in their representative character, so as to warrant a judgment *de bonis testatoris*. All the authorities show, that such a count

only makes the defendant liable personally; and it appears to me, that if the case were perfectly new, that would be the correct view of the law upon the subject. . . . In this case, there never was any simple contract debt owing from the testator. The debt stated in the declaration, is a debt contracted by the defendants, in their character of executor and executrix, by their having received a sum of money, to be paid over to the plaintiff. If the testator, in his lifetime, had been indebted to the plaintiff for money had and received to his use, there would not be any specific appropriation of the money so received to the plaintiff's use, but that money, on the death of the testator, would have gone into his general funds, and the debt must have been paid out of those funds in its regular order. But where an executor receives money to the use of a particular individual, it operates as a specific appropriation of that money belonging to the party, and he, in his individual capacity, must be liable for the money so received; it has nothing to do with the accounts of the testator."

III. No question of agency exists in this case, and the authorities on that subject cited by the defendant are cited *mal-apropos.* The argument that defendant may now set up the payment of Hagar's debts, as a lawful appropriation of plaintiff's money, rests upon the theory that an administrator is the agent of his intestate, or agent of the creditors and heirs of the estate. This is a novelty in the law of agency that will not bear criticism.

An administrator is the legal representative of his intestate, and impersonates him in the management and distribution of the estate. Choses in action descend to him, and "he has the same property in the effects of the deceased, as the deceased himself had when living, the same power of disposing of them, and the same remedies for recovering or protecting them." 2 Roberts Wills, 72.

Defendant did not receive or hold plaintiff's share of the charter money as agent of Hagar's estate, but did collect it as plaintiff's agent. The authorities already cited by us show that defendant did not hold this money as agent of Hagar's creditors or his heirs, and that whether he had notice that it was plaintiff's money before he paid it to Hagar's creditors, was entirely immaterial.

The authorities relied on touching the law of agency have no application to the case.

*J. W. Spaulding,* for the defendant.

PETERS, J.   The evidence shows that the plaintiff and H. S. Hagar and another were the owners of the brig Yazoo, Hagar owning the controlling share ; that the brig was let to Cheeseman & Marshall to carry a load of ice, the master of the vessel signing the usual bill of lading ; that an action was commenced by Hagar in his life time, in his own name, against Cheeseman & Marshall, upon an account annexed, one item being for freight and demur- rage for the voyage performed by the Yazoo ; that an award of referees was made allowing the claim ; that before the award was presented to court for acceptance Hagar died, and the defendant was appointed his administrator ; that judgment was taken out in defendant's name as administrator, the execution collected, and the principal part thereof paid for the benefit of one Whitmore, to whom Hagar had assigned the claim before he died. This action is against the defendant in his individual capacity, and not as administrator.

The defendant contends that a presumption arises that Hagar was the hirer of the vessel from the other owners and sole owner of the freight, because he recovered therefor in his own name. We think the plaintiff's ownership is *prima facie* evidence of his right to a share of the sum recovered for the earnings of the vessel, notwithstanding a recovery in Hagar's name alone.   And we see no legal obstacle in the way of the plaintiff recovering the same of the defendant in his individual capacity, if the facts sustain such a claim.   The plaintiff was under no obligation to employ Hagar in his life time as his agent, or to continue the administrator of Hagar in such agency after his death.

But the defendant cannot be personally liable to the plaintiff for money collected in his name as administrator, unless he was notified not to pay it over before he did pay it over, or unless he acted fraudulently in withholding it from the plaintiff.   It must be borne in mind that the defendant was not an intermeddler or a trespasser.   His possession was in no sense a wrongful one.   If

a person gets money into his hands illegally he cannot discharge himself by passing it over to another. Here the possession was legal.

Spencer, J., in *Hearsey* v. *Pryn*, 7 Johns. 181, says: "The law is well settled, that an action may be sustained against an agent, who has received money to which his principal has no right, if the agent has had notice not to pay it over, and in some cases the action has been sustained where no notice was given, if it appears that the money has not been actually paid over." In note j, to *Adams* v. *Hopkins*, 5 Johns. (2d ed.) 255, where the cases in support of the statement are liberally cited, it is said the action for money in the agent's hands "should be brought against the principal, unless in special cases, as when notice has been given to the agent not to pay it over or he has acted with *mala fides.*" In *Cox* v. *Prentiss*, 3 M. & G. 348, Lord Ellenborough says an agent is liable "as long as he stands in his original situation, and until there has been a change of circumstances by paying over the money to his principal, or something equivalent to it." The following authorities are pertinent : *Lafarge* v. *Patterson*, 7 Cow. 456. *Morrison* v. *Currie*, 4 Duer, 79. *Langley* v. *Warner*, 3 Sandf. 209. *Elliot* v. *Swartwout*, 10 Pet. 137, 155. *Garland* v. *Salem Bank*, 9 Mass. 408. *Fowler* v. *Shearer*, 7 Mass. 14. *Jefts* v. *York*, 12 Cush. 196. *Thompson* v. *White*, 45 Maine, 445. *Smith* v. *Colby*, 67 Maine, 169, and cases. *Goodell* v. *Buck*, 67 Maine, 514. Story's Agency § 300, and cases in note.

If the defendant in good faith paid over the money or allowed it to be appropriated for the benefit of the estate he represented, without notice not to pay it over, he is not personally liable therefor. He cannot be charged with bad faith, there being no notice not to pay over, unless he knew that the money belonged to the plaintiff, and that he was committing a fraud upon the plaintiff by paying it or allowing it to be paid to another person. Nor does it necessarily follow that the defendant had such knowledge, or that he acted with bad faith, because it was known to him that the plaintiff was part owner of the vessel from which the earnings accrued. That fact is to be considered and weighed with all other facts and circumstances. For, notwithstanding that fact, he

may have believed that the funds belonged to his intestate, because recovered in the name of his intestate ; or that the intestate had a claim or lien upon them, or an offset against them, through his accounts as ship's husband ; or that for other reason he was justified in using the money as part of the property and assets of the estate ; and, if honest in his conviction and conduct, however mistaken his conclusion, having had no notice not to pay over the funds, he would not be guilty of defrauding the plaintiff. If the rule were otherwise, there would be too little security to persons engaged in the administration and settlement of estates. See authorities *supra*.

The defendant contends, that the plaintiff cannot in any event recover more than what his share of the funds would be after deducting the expenses of obtaining and collecting the judgment. There can be no doubt of that proposition. We cannot perceive why the plaintiff should stand better excluded than if included as a party in the former litigation. Certainly, the doctrine of recoupment would allow the deduction. *Harrington* v. *Stratton*, 22 Pick. 510. *Carey* v. *Guillow*, 105 Mass. 18. 2 Pars. Con. 741.

We do not concur in the further position taken by the defense, that the defendant has a right to set off against anything due the plaintiff on this account, any demands that the estate of Hagar may have against the plaintiff growing out of disbursements expended upon and losses sustained by the same vessel. If all the matters concerning the vessel are to be settled, resort must be had by the parties seeking such a settlement to a bill in equity, —a remedy which would undoubtedly lie. And the state of the mutual accounts of the owners may be a fact bearing upon the question whether the defendant acted with *mala fides* or not, as has been before stated. The defendant raises the point that, the claim having been assigned by Hagar to Whitmore, he would not be responsible for any action taken by the attorney who had charge of the suit, unless done with his co-operation and assent. No doubt, that would be so. The defendant would not be liable for any act done by another person without his assent. If the appropriation was made by his direction, or if he assented to the appropriation when he could have prevented it, then he would be

liable for the act of another as if done by himself. If the money was paid over by the attorney employed (by his intestate), without the authority and assent of the defendant, the liability would rest elsewhere than upon him. He would not be liable therefor.

*Exceptions sustained.*

APPLETON, C. J., WALTON, DANFORTH and VIRGIN, JJ., concurred.